1  Anthony Bobadilla

2    CDC # AL5413

3  Mule Creek State Prison

4  P.O. Box 409020

5  Ione, Ca 95640

FILED

MAR 08 2017

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

8          United States District Court

9      For the Eastern District of California

11  Anthony Bobadilla,                    No. 2:16-cv-0226-GEB-EFB

12      Plaintiff,

13          v.                            First Amended Complaint

14  J. Lizarraja, et al.,

15      Defendants.

17                I. Jurisdiction

18  1.    This Action is brought pursuant to 42 U.S.C. Section ("§")1983
19  to redress the deprivation, under color of state law, of rights
20  secured by the Constitution of the United States ("U.S."). Jurisdic-
21  tion is based upon 28 U.S.C. §§1331 and 1343. The unlawful acts
22  and practices alleged occurred primarily within this judicial
23  district and the majority of the defendants reside within
24  this district 28 U.S.C. §1391(b).

26                II. Parties

27  2.    Plaintiff Anthony Bobadilla is, and was at all times mention-
28  ed herein this complaint; a 19 year old-first time offender 'life

(1)

1  PRISONER' OF THE STATE OF CALIFORNIA, IN THE CUSTODY OF THE CALIFOR-
2  NIA DEPARTMENT OF CORRECTIONS AND REHABILITATION ("CDCR"). HE IS,
3  AND WAS ALSO AN INMATE-PATIENT UNDER THE TREATMENT OF PRISON
4  MENTAL HEALTH STAFF FOR MENTAL HEALTH CONDITIONS AT THE ENHANCED
5  OUT-PATIENT PROGRAM ("EOP") LEVEL OF CARE. PLAINTIFF IS AND WAS CONFIN
6  -ED AT MULE CREEK STATE PRISON ("MCSP").

7

8  3.    DEFENDANT J. LIZARRAGA IS AND HAS BEEN THE WARDEN AT MCSP.
9  HE IS AND HAS BEEN LEGALLY RESPONSIBLE FOR THE OPERATION OF
10  MCSP AND FOR THE WELFARE OF ALL THE INMATES OF THAT PRISON.
11

12  4.    DEFENDANT G. MURPHY IS A CORRECTIONAL OFFICER FOR CDCR. AT
13  ALL TIMES MENTIONED HEREIN, HE HELD THE RANK OF LIEUTENANT
14  AND WAS ASSIGNED TO MCSP.
15

16  5.    DEFENDANT B. COCHRAN IS A CORRECTIONAL OFFICER FOR CDCR. AT
17  ALL TIMES MENTIONED HEREIN, HE HELD THE RANK OF SERGEANT AND WAS
18  ASSIGNED TO MCSP.
19

20  6.    DEFENDANT G. GUZMAN IS A CORRECTIONAL OFFICER FOR CDCR WHO
21  AT ALL TIMES MENTIONED HEREIN WAS ASSIGNED TO MCSP.
22

23  7.    DEFENDANT S. BUCKNER IS A CORRECTIONAL OFFICER FOR CDCR. AT
24  ALL TIMES MENTIONED HEREIN, HE HELD THE RANK OF LIEUTENANT AND
25  WAS ASSIGNED TO MCSP.
26

27  8.    DEFENDANT T. LEE IS A CORRECTIONAL OFFICER FOR CDCR. WHO AT
28  ALL TIMES MENTIONED HEREIN WAS ASSIGNED TO MCSP.

9.    DEFENDANT J. SOARES IS A CORRECTIONAL OFFICER FOR CDCR WHO AT ALL TIMES MENTIONED HEREIN WAS ASSIGNED TO MCSP.

10.    DEFENDANT P. QUEZADA IS A CORRECTIONAL OFFICER FOR CDCR WHO AT ALL TIMES MENTIONED HEREIN WAS ASSIGNED TO MCSP.

11.    DEFENDANT N. ALI IS A CORRECTIONAL OFFICER FOR CDCR WHO AT ALL TIMES MENTIONED HEREIN WAS ASSIGNED TO MCSP.

12.    DEFENDANT M. ELORZA IS A CORRECTIONAL OFFICER FOR CDCR. AT ALL TIMES MENTIONED HEREIN, HE HELD THE RANK OF APPEALS COORDIN -ATOR AND WAS ASSIGNED TO MCSP.

13.    DEFENDANT W. DAVID SMILEY IS AND HAS BEEN THE CHIEF EXECU- TIVE OFFICER ("CEO") AT MCSP FOR THE CALIFORNIA CORRECTIONAL HEALTH CARE SERVICES ("CCHCS"). HE IS AND HAS BEEN LEGALLY RESPONSIBLE FOR THE OPERATION OF MCSP-CCHCS AND FOR THE WELFARE OF ALL INMATE- PATIENTS OF THAT PRISON.

14.    DEFENDANT J. TELANDER IS A HEALTH CARE STAFF FOR CCHCS. AT ALL TIMES MENTIONED HEREIN, HE HELD THE RANK OF CHIEF OF MENTAL HEALTH AND WAS ASSIGNED TO MCSP.

15.    DEFENDANT D. COFFIN IS A HEALTH CARE STAFF FOR CCHCS. AT ALL TIMES MENTIONED HEREIN, HE HELD THE RANK OF SENIOR PSYCHOLOGIST AND WAS ASSIGNED TO MCSP.

16.    DEFENDANT C. MELTON MONTES WAS A HEALTH CARE STAFF FOR CCHCS

(3)

1  At All times Mentioned Herein, He Held the Rank of Clinical Psychologist
2  And Was Assigned to MCSP And As Plaintiff's Primary Clinician.

3

4  17.    Each Defendant is being Sued individually And in their Own Official
5  Capacities. At All times Mentioned Herein, they were Acting Under Color
6  of California Law.

7

8              III. Introduction of Facts

9  18.    This Action Arose from A defendant's Practices, Acts And/or Abuse
10 of Policies which Essentially Caused Plaintiff to be Sexually Assaulted;
11 Resulting in Multiple Claims for Relief, Such As, but Limited too: Failure to
12 Protect, inadequate Mental Health Care, Campaign of Harassment And Retaliation
13 by Proxy - For Filing Inmate Appeals ("602(s)"):

14          a) Unauthorized Urine tests;

15          b) Unnecessary And/or False disciplinary Charges;

16          c) Wrongful Convictions in disciplinary Hearings;

17          d) depravation of Work Assignment/Interferrence with Mental
18     Health treatment;

19          e) Errerous Screen Outs in 602(s);

20          f) Wrongly Placed And Retained in 'Adminstrative Segergation Unit'
21     ("ASU") On trumped-up Charges;

22          g) Loss of Personal Property in the Possession of Prison Officials'
23     ; And

24          h) intimidation, threat of Physical Violence And/or Use of Force.

25

26 19.    The Actions of the Defendants' Adversely impacted Plaintiffs Conditions
27 of Confinement And Mental Well-being; Pursuant to their Customs And Official
28 Policies.

(4)

## IV. Facts

20.      Plaintiff Has Served Approximately Eighteen (18) Months of His Life Sentence in November of 2013.

21.      Mean While And During these 18 Months, Plaintiff Has Been Hospit-alized Numerous times for Suicidal Ideation. Plaintiff Was Placed in the EOP Level of Care For this Same Reason.

22.      He's Also Been Housed in Units Specifically Meant for Inmate-Patie-nts' that Are Also being treated At the EOP Level of Care.

23.      On November 28, 2013, Plaintiff Walked into MCSP 'Facility A' ("Fac. A") 'A-Side dining Hall' Along with Other EOP Inmate-Patients' from 'Unit-5' At Approximately 18:15 Hours.

### A. Facts Pertaining To Plaintiff's Violation Of His Fourth, Eighth And Fourteenth Amendment Rights

#### 1. Plaintiff Was Subjected To A Sexual Assault Involving Unreasonable Search; Invasion Of Privacy; Unnecessary And Excessive Use Of Force; And Failure To Protect.

24.      When Plaintiff Walked Out of 'A-Side Dining Hall', Presumably At 18:30 Hours. Plaintiff Was Subjected to An 'Unauthorized Pat Search' by Defendant Guzman.

25.      Plaintiff Believes And Was Informed that Defendant Cochran Was there And Witnessed this 'Unauthorized Pat Search.'

(5)

26.     Prior to the Search, Plaintiff And Defendant Guzman Had A discrepancy As to the Legitimacy of the Search; Defendant Guzman Conducted this Search despite Having 'No' Reasonable Suspicion And/or Cause.

27.     The Plaintiff Submitted to the Defendant Guzman's Nuisances in Abatement to His Fear of being Physically Harmed.

28.     Defendant Guzman's Search Was Unreasonable, this Use of Force Was therefore 'Unnecessary.'

29.     His 'Unnecessary Use of Force' turned demeaning, degrading, 'Excessive' Abusive And An invasion of Privacy; He Ran His Four (4) Fingers Up And down between Plaintiff's buttocks.

30.     This 'Excessive Use of Force' Was Applied Maliciously And Sadistically to Cause Harm, there Was No good-faith Effort Here because there Was No Need to Maintain Or Restore discipline.

31.     After Defendant Guzman Concluded His Sexual Misconduct; He Order Plaintiff to Return to His Assigned Housing Unit but Prior to Plaintiff Returning to the EOP Unit; Defendant Guzman Patted Plaintiff On the top Of His Head, And Quote: "Nice Hat [Pat, Pat, Pat] Good boy."

32.     Witness Inmate Vega, CDC # AM9533, Seen Most; if Not All of this Happen.

33.     Before, during And/or After Defendant Guzman's Search, No Officer intervened And/or Report this Misconduct. Defendant

1  COCHRAN KNEW OR SHOULD HAVE KNOWN THAT HIS ACTION IN RESPONSE TO
2  DEFENDANT GUZMAN'S MISCONDUCT WOULD EXPOSE PLAINTIFF TO A SUBSTANTIAL
3  RISK OF SERIOUS HARM AND DISREGARDED THAT RISK BY FAILING TO TAKE REASON-
4  ABLE MEASURES TO ABATE IT.

5

6  34.    ON DECEMBER 5, 2013, PLAINTIFF SUBMITTED A 602 ON DEFENDANT GUZMAN'S
7  STAFF MISCONDUCT.

8

9  35.    THE APPEALS OFFICE IN MCSP RECEIVED PLAINTIFF'S 602 ON DEMEBER
10  6, 2013.

11

12  36.   DEFENDANT ELORZA ACCEPTED THE 602 AS A STAFF COMPLAINT; PURSU
13  ANT TO TITLE 15, CALIFORNIA CODE OF REGULATIONS ("CCR") §3084.9(i)(2); DESPITE
14  HAVING RECEIVED INFORMATION OF 'EMPLOYEE SEXUAL MISCONDUCT' REFER TO
15  CCR§3401.5(c); ON DECEMBER 21, 2013.

16

17  37.   FROM THE TIME BEING OF DECEMBER 6, 2013 - DECEMBER 21, 2013; PLAINTIFF
18  WAS NEVER 'VIDEO RECORDED' OF HIS ALLEGATIONS - AS REQUIRED BY CCR§3328.1(d)(2).

19

20  38.   ON JANUARY 13, 2014, DEFENDANT MURPHY INTERVIEWED PLAINTIFF IN REG-
21  ARD HIS ALLEGATIONS OF DEFENDANT GUZMAN'S 'SEXUAL ASSAULT.'

22

23  39.   FROM THE DATES OF FEBRUARY 6, 2014 - APRIL 3, 2014; DEFENDANT ELORZA
24  INFORMED PLAINTIFF THAT HIS 602 RESPONSE WILL BE DELAYED ON A MEMOR
25  -ANDUM VIA INSTITUTIONAL MAIL;(4)TIMES.

26

27  40.    PLAINTIFF NO LONGER COULD TOLERATE SUCH NUISANCES OF THE DELAYS
28  TO PURSUE WITH HIS CONSTITUTIONAL RIGHTS; HE SUBMITTED AN OBJECTION ON

1    A CDCR 22 Form too the Defendant Elorza On April 4, 2014.

2

3    41.    On April 11, 2014, An Employee of Defendant Elorza Responded to
4 the Objection And inform Plaintiff His Response Was Completed On "4/
5 17/14." (sic)

6

7    42.    Defendant Lizarraga Reviewed Plaintiff's 602, Defendant Murphy
8 Minimized Defendant Guzman's 'Employee Sexual Misconduct' And Lizarra-
9 ga Determined that the Alleged misconduct did not Violate CDCR Policy
10 On April 15, 2014.

11

12    43.    Defendants Lizarraga, Murphy, And Elorza Knew Or Should Have
13 Known that their Actions in Response to Plaintiff's Allegations Would
14 Expose Him to A Substantial Risk of Serious Harm And disregarded
15 that Risk by Failing to take Reasonable Measures to Abate it.

16

17    44.    Plaintiff Submitted His 602 to the third LEVEL Review On April
18 30, 2014; In Hope Of Some type Of Relief. His Claim Was Exhausted
19 On July 30, 2014.

20

21

22          2. PLAINTIFF WAS SUBJECTED TO INADEQUATE MENTAL
23             HEALTH CARE.

24    45.    Prior to Plaintiff filing the 602 On Defendants Guzman And Presum-
25 Ably Cochran. He Spoke With Defendant Montes (AKA, His Primary Clinician
26 On-Site; In Regard the Defendant Guzman's "Inappropriate Search From
27 the dining Hall," On December 5, 2013.

28

46.   Defendant Montes informed And Encouraged Plaintiff that He is A brave individual for Pursuing to File A 602.

47.   At No time After Receiving this information from Plaintiff did the defendant Montes Report this 'Employee Sexual Misconduct' to Any One; As Required by the Health Care Services Policy, CCR §3401.5(c) And/or California Penal Code ("PC") §13333.11.

48.   The Defendant Montes Also did Not Provide An Urgent Suicide Risk Assessment Or Conduct Any Follow Up With A Routine Mental Health Evaluation.

49.   For Approximately 2 months, Plaintiff Persistently would Show Up in the Facility-Eop Center to Speak With His Primary Clinician About the "Inappropriate Search from the dining Hall".

50.   On January 31, 2014, Plaintiff felt that Defendant Montes was displaying A disregard for His Mental Health And Constitutional Rights. He tried Speaking with Defendant Coffin but was brushed off. Plaintiff decided to File A CDCR 22 but Defendant Coffin Refused to Forward it to Defendant Montes, Plaintiff then decided to mail it to Defendant Telander, Via Institutional mail.

51.   Plaintiff Submitted A 602 On February 5, 2014; On Defendants Montes, Coffin, And Telander, Alleging He was being denied Adequate Mental Health Care.

52.   The Health Care Appeals Office Received the 602 On February 6, 2014

(9)

53.     On February 12, 2014; Defendant Smiley determined Defendant Montes Conduct does 'Not' meet Critera For Assignment As A Staff Complaint.

54.     The Health Care Appeals Office Accepted the 602 At the First Level On February 18, 2014.

55.     Defendant Coffin interviewed Plaintiff In Regard His Appeal On March 5, 2014.

56.     Plaintiff's 602 Was Partially Granted by Defendant Telander, On March 14, 2014. He Agreed With defendant Coffin in Assigning Plaintiff A different Clinician to improve His treatment And therapeutic Alliance.

57.     In discontent, Plaintiff Submitted His 602 to the Second Level On March 18, 2014.

58.     Defendant Smiley Reviewed the 602 And Responded by Stating that Plaintiff's Health Care treatment At MCSP Has been Appropriate On April 30, 2014.

59.     Defendants Montes, Coffin, Telander And Smiley Knew Or Should Have Known that their Actions in Response to Plaintiff's Serious Medical Need Would Expose their Patient/Plaintiff to A Substantial Risk of Serious Harm.

60.     Plaintiff Submitted His 602 to the third Level On May 5, 2014. His Claim Was Exhausted On July 1, 2014.

B. FACTS PERTAINING TO PLAINTIFF'S VIOLATION OF HIS FIRST,
FIFTH AND FOURTEENTH AMENDMENT RIGHTS.

61.     PRIOR TO FILING THE 602-GRIEVANCE ON DEFENDANT GUZMAN but
AFTER HIS 'SEXUAL MISCONDUCT.' PLAINTIFF WAS IN 'A-SIDE DINING' ON DECE
-MBER 3, 2013, AT APPROXIMATELY 7:45 HOURS.

62.     ANOTHER INMATE-PATIENT ASK PLAINTIFF FOR SOME OF HIS FOOD ON HIS
STATE ISSUED TRAY. HE WAS FEELING DEPRESSED TO EAT SO HE DECIDED TO TOSS
HIS "BREAD" TO INMATE-PATIENT

63.     MEAN WHILE, OTHER INMATE-PATIENTS' WERE HOLLERIN' "BUUUBBAA"

64.     PLAINTIFF WAS PLACED IN HANDCUFFS FOR SOME UNKNOWN REASON,
EVERY; IF NOT ALL, THE INMATE-PATIENTS WERE 'BOOING' THE OFFICER FOR
PLACING PLAINTIFF IN HANDCUFFS. THE SERGEANT WALKED IN AND PLAINTIFF
WAS ESCORTED OUT; HE WAS TAKEN TO THE 'PROGRAM'S OFFICE' AND PLACED
IN – A TEMPORARY HOLDING CELL.

65.     HE WAS STRIPED OUT; PLAINTIFF HAD ON HIS POSSESSION THE 602
-GRIEVANCE ON DEFENDANT GUZMAN'S 'SEXUAL MISCONDUCT' AND BELIEVES
THAT WHEN HE WAS ESCORTED INTO THE SERGEANT'S OFFICE AN UNKNOWN
OFFICER READ THE 602.

66.     WHILE AT THE SERGEANT'S OFFICE. PLAINTIFF WAS ACCUSSED OF
'INCITING A RIOT.' PLAINTIFF DENIED THE ALLEGATIONS AND WAS ULTIMATELY
ALLOWED TO RETURN TO HIS ASSIGNED HOUSING UNIT.

I. PLAINTIFF WAS SUBJECTED TO A CAMPAIGN OF HARASSMENT
AND RETALIATION BY PROXY

67.     ON DECEMBER 6, 2013, PLAINTIFF WAS ISSUED A SERIOUS, RULES VIOLATION REPORT ("RVR"). SERGEANT R. SEPULVEDA CHARGED PLAINTIFF WITH 'INCITING A RIOT.'

68.     PLAINTIFF WENT TO THE DISCIPLINARY HEARING ON DECEMBER 27, 2013. HE PLEAD NOT GUILTY AND EXPLAINED HIS SITUATION; THE SENIOR HEARING OFFICER ("SHO") FOUND PLAINTIFF GUILTY OF 'BEHAVIOR WHICH COULD LEAD TO VIOLENCE.'

69.     THE SHO INFORMED THE FACILITY CAPATIN TO PLACE PLAINTIFF ON PRIVILEG-E GROUP "C" DUE TO THE "RESULT OF A DISCIPLINARY HEARING" ON DECEMBER 29 2013.

70.     ON JANUARY 14, 2014, PLAINTIFF WAS SUMMONED TO COMMITTEE AND PLACED ON WORK GROUP/PROGRAM ASSIGNMENT "C/C" ("C-STATUS")

71.     PLAINTIFF SUBMITTED A 602 ON JANUARY 28, 2014; ALLEGING THAT SERGEANT R. SEPULVEDA'S RVR IS FALSE AND THAT THE SHO ERREOUSLY FOUND HIM GUILTY. ("FALSIFYING DOCUMENTS - 602")

72.     CORRECTIONAL OFFICER L. ZAPATA ORDER PLAINTIFF TO SUBMIT TOO AN UNAUTH-ORIZED URINE TEST - ON FEBRUARY 25, 2014. PLAINTIFF FREELY REFUSED AND WAS INFORMED HE WOULD RECEIVE A RVR.

73.     ON MARCH 2, 2014, PLAINTIFF WAS INADVERENTLY ISSUED ANOTHER SERIOUS RVR; ALLEGING THAT PLAINTIFF 'REFUSED TO FOLLOW D.O.T PROCEDURES.'

74.     TWO (2) DAYS LATER, PLAINTIFF WAS ISSUED ANOTHER SERIOUS RVR. FOR 'REFU

(12)

1  -sing to Provide A Urinalysis test."

2

3  15.       Sometime between February of 2014 - March of 2014. Plaintiff Receiv
4  -ed A CDC Form 695 Via institutional mail; informing Him that His 'Falsifying doc
5  -uments-602' Was Misplaced And/or Lost And for Him to Re-create His 602
6  Plaintiff Re-submitted A Copy of the Original 602 Along with the CDC Form 695

7

8  16.       The Appeals Office Recieved the 602 On March 24, 2014 And Presumably
9  it was Accepted And/or Assigned the Same day.

10

11 17.       Plaintiff Went to the disciplinary Hearing to Contest the 'Method'
12 of the Veracity of the Charges. Plaintiff Plead Not Guilty to the Charge of
13 'Refusing to Follow DOT Procedures' because He did Not believe His Conduct;
14 Constituted, A 'Serious Offense'

15

16 18.       Defendant Buckner Found Plaintiff Guilty of An 'Administrative
17 Offense' despite the 'Reporting Employee's' Omission of Documenting Such
18 Per Se 'Misconduct,' As Required by CCR §3312(a)(2). He imposed Five(5) days Con-
19 fined to Quarters ("CTQ"); Restricting Plaintiff from Leaving His Cell As Punishment

20

21 19.       Seven(7) days Later; Plaintiff Went to the disciplinary Hearing And
22 Plead Not Guilty to 'Refusing to Provide A Urinalysis test.' Defendant
23 Buckner Found Plaintiff Guilty despite the Defense - He imposed Another 5 days
24 Of CTQ; 60 days Loss Of Yard; Another Year of Random drug test, twice A Month
25 , 90 days Loss of Contact Visit And 180 days Loss Of Non-Contact Visit After those 90 days
26 ; Restricting Plaintiff From Leaving His Cell, And Any type of Contact with
27 Family And Fellow Prisoners, Except by Mail And Walking to And From the
28 dining Hall; As Punishment.

80. Plaintiff Submitted A 602 On the Defendant Buckner's Staff Misconduct On April 2, 2014.

81. On April 4, 2014. Plaintiff Requested An Interview With Defendant Lee In Regard His Overly Restricted Conditions in Plaintiff's Confinement during His CTQ Status. Defendant Lee Blamed Sergeant Priest On the Response.

82. Due to too Many Factors, i.e., An Administrative RVR, And Approximately (2) months of Not Receiving the Majority of His Inmate Priority Passes ("Ducats"); Plaintiff decided to Submit An Inmate Request to Defendant Lee Asking Him About the Whereabouts of His State issued Ducats, He Acknowledged Such Request but declined to Respond to the Request; On April 7, 2014.

83. Given to the Suspicion of the Surrounding Facts of Defendant Lee's Acts; Plaintiff Submitted A Request to Sergeant Priest For Clarification in Defendant Lee's Response On Plaintiff's Request. His Response Was Inconsistent With Defendant Lee's [Date of Response: April 18, 2014]

84. On April 15, 2014, Plaintiff Submitted A Supervisor Review Due too Defendant Lee's Failure to Respond to Plaintiff's Request; Via In Person.

85 Sergeant Ramirez Responded to the Request On April 18, 2014.

86. Plaintiff Also 602 the Defendant Buckner's Findings And disposition the Same day [Refer t Paragraph 78] And Was Exhausted As Administrative Remedies Were Available.

87. On April 22, 2014, Plaintiff Was Interviewed In Regard His Falsifying Docu

1   -ments-602' by Defendant Buckner And denied it. Plaintiff Exhausted His 602 As

2   Administrative Remedies Were Available.

3

4   88.    Plaintiff 602 the Defendant Buckner's findings And his disposition On

5   April 26, 2014.[Refer to Paragraph 79]

6

7   89.    On April 29. 2014, Plaintiff Was Removed off of 'C-Status'

8

9   90.    Plaintiff Submitted A 602 On Defendant Lee On April 30, 2014, Alleging 'Cam-

10  paign of Harassment.'(" COH-602")

11

12  91.    Defendant Buckner Classified Defendant Lee's false RVR;Alleging

13  that Plaintiff 'Disobeyed Written Orders,' On May 7, 2014.

14

15  92.    On May 8, 2014; Plaintiff was interviewed by Defendant Murphy in Regard

16  the Defendant Buckner's Wrongful findings And disposition And He Reluctantly

17  granted in Part His 602 [Refer to Paragraph 88]; Reversing And dismissing the RVR

18  conviction, On May 12, 2014. Plaintiff Submitted His 602 to the third level And

19  Exhausted His 602 As Administrative Remedies Were Available.

20

21  93.    On May 12, 2014, Defendant Elorza Rejected Plaintiff's 602 [Refer to Para-

22  graph 80] without Any Citation And/or Legitimate Reason. He Also Informed

23  Plaintiff that the Defendant Lizarraga determined that the 602 'Does Not Meet

24  the Criteria' ("DNMC") for Assignment As A Staff Complaint, On April 28, 2014.

25

26  94.    On May 16, 2014; Defendant Elorza Deliberately Rejected Plaintiff's COH-

27  602 [Refer to Paragraph 90] without Refering it to the Hiring Authority Pursu-

28  Ant to CCR §3084.5(b)(4).

(15)

95.   On May 17, 2014. Defendant Lee's False RVR Was 'Dismissed' by Lieuten-
ant O'Connor.

96.   Plaintiff Was in A Fight On May 25, 2014. Defendant Buckner Confined
Plaintiff in ASU - In Retaliation of filing 602(s); On Trumped-Up Charges, all
-Eging He 'Participated in A Riot.' Plaintiff Was Order to Submit to An Unauth
-orized Piss test by Defendant Quezada. Plaintiff is informed And believe
-s that Defendant Buckner Authorized the test Or Allowed it to go Uncorre
-cted On His Watch. Plaintiff believes that Defendant Buckner Either
failed to inform 'Unit-5 Floor Staff' that Plaintiff Was going to ASU Or
Allowed 'Unit-5 Floor Staff' to inventoried Plaintiff's Personal Property
the following Resulting in Several lost And/or Stolen Property.

97.   On May 24, 2014, [Thursday], Plaintiff Appeared in Committee. On June 1. 20
-14, Plaintiff filed A 602 informing the Appeals Coordinator - Defendant Elorza
that ASU - Staff Won't give Him His Legal /Confidential Property; mater
-ial, And/or Paper Work. Defendant Elorza Rejected the 602 on June
6, 2014.

98.   On June 11, 2014 And June 15, 2014, Plaintiff Was given All His Legal
Property; He informed Elorza that He Received it by Withdrawing His 602.

99.   Mean While, On June 1, 2014. Plaintiff Was issued A Serious. RVR Alleging
that Plaintiff 'failed to Follow Written Orders' by Defendant Soares. His Rep
-ort Made two References of two defendants (i.e.. Buckner & Lee).
His Report Was Sent to Records On May 27, 2014. However Defendant
Lee's 'Chrono' did Not Exist Until May 28, 2014, And Defendant Buckner
disposition [Refer to Paragraph 79] Was Held invalid And Void [Refer to

PARAGRAPH 92] Lastly, the date and time of the Violation; Plaintiff was found 'Not Guilty' and the defendant LEE's 'FALSE RVR' was 'dismissed' [REFER to PARAGRAPH 95]

100.    Plaintiff was issued another serious RVR for 'REFUSING to Provide a Urinalysis test' On June 2, 2014. [REFER to PARAGRAPH 96]

101.    THE Following day, Plaintiff was issued the Serious 'trumped-up' RVR of 'Participation in a Riot' [REFER to PARAGRAPH 96]

102.    Plaintiff Submitted (2) 602 On June 13, 2014:
      a) On defendant Lee for 'Falsifying Documents and Retaliation' [REFER to PARAGRAPH 95], And
      b) For the 'missing Property' that was Ultimately Never Located, Nor was Plaintiff Ever Compensated For His Lost. This 602 was Exhausted As Administrative Remedies were Available.

103    On June 20, 2014, Plaintiff was found 'guilty' of 'Participation in a Riot' despite the Vague descriptions of who was involved, And What Presumably Occurred.

104.    On June 23, 2014, Plaintiff's 'COH-602' was Re-Submitted informing the Defendant ELORZA that the 602 is a 'Staff Complaint' Allegation, Not a 'disciplinary issue.' Despite the Defendant ELORZA's Knowledge As to why Plaintiff could Not Re-Submit His 602 Within the Legal time frame, He deliberately Cancelled the 602 Without 'Excercising Any discretion.'

105.    Inmate Castellanos - CDCR# A18598, Allegedly Another Inmate Who 'Participated in the Riot', According to Defendant Quezada; was Found 'Not

1 'Juilty' of that Charge, Rather Juilty of 'Unlawful Assembly' For intervening

2 in the Fight Plaintiff Was involved. [Refer to MCSP-RVR Log No. A-05-14-104]

3

4 106.     Plaintiff Was Found guilty of 'Refusing to Provide A Urinalysis test'

5 despite the Defendant Guezada Not Having 'Probable Cause And/or Suspic

6 -ion', On June 27, 2014.

7

8 107.     (4) days Later, Plaintiff Was Found Juilty of 'Failure to Follow Written

9 Orders' by defendant Murphy despite Him Having Knowledge that those Written

10 Orders' Were No Longer 'Valid' And that Plaintiff informed Him that He Was

11 At A 'disciplinary Hearing' in which the Charges Against Plaintiff Were

12 'dismissed' [Refer Also to Paragraph '19']

13

14 108.     On July 4, 2014, Plaintiff Was Released From Asu with A Suspended 'SHU'

15 back to Facility-A.

16

17 109.     Plaintiff Submitted Another 602 On Defendant Lee's False 'Custodial

18 Counseling Chrono' Plaintiff's 602 Described "Staff Misconduct" He Attached

19 Overwhelming Evidence that the fabricated document Was in deed False And

20 gave Raise to the Claim of Retaliation. [Date of Submission was July 7, 2014.]

21

22 110.     On July 16, 2014, Plaintiff Submitted A 602 On An Officer A. Pogue, For Refu

23 sing to Sign A CDCR 22 form in A Belligerent And Intimidating Fashion. This 602

24 Was Exhausted As Administrative Remedies Were Available.

25

26 111.     On July 18, 2014, Defendant Ali Used Unnecessary Force On Plaintiff, He

27 threatened Him. Prior to His Verbal threat He Called Plaintiff A "Snitch" (sic.)

28 Plaintiff did Not Report this incident Until March 7, 2016, due too Fear of More

1  Physical Retalalitorial Acts. His 602 was Exhausted On August 30, 2016.

2

3  112.    On July 20, 2014, Plaintiff Submitted A 602 On the Findings And disposit

4  -ion of the 'Refusing to Provide A Urinalysis test' Hearing.

5

6  113.    Plaintiff Also Submitted Another 602 On the Findings, Disposition,

7  And Misconduct of (3) Defendants:

8          a) He disputed that there was No Violation On His behalf;

9          b) that defendant Soares 'Falsified the RVR In Harassment';

10         c) that defendant Lee Had A Part In the Process; And

11         d) that defendant Murphy decision In the Hearing was bias.

12  [Refer to Paragraph 107.] On July 24, 2014.

13

14  114.    On July 28, 2014, Defendant Lizarraga Determined that both of Plaintiff's

15  602 Against Defendant Lee [Refer to Paragraphs 102 And 109] 'DNMC' For Assignment As

16  A 'Staff Complaint'

17

18  115.    The Following day, Plaintiff Submitted Another 602 On the Findings,

19  disposition And Misconduct; He Explained that His Conviction [Refer to Para

20  graph 103] was inconsistent with the Charged Violation And that the Charge

21  was 'trumped-up' for the Purpose of Retaliation.

22

23  116.    Defendant Elorza Accepted the 602 [Refer to Paragraph 112] the day

24  After, i.e., July 30, 2014.

25

26  117.    The Next Day, Defendant Elorza Cancelled Plaintiff's 602 Against

27  Defendant Lee [Refer to Paragraph 109]

28

118.    On August 9, 2014, Plaintiff was interviewed by Correctional Lieu
-tenant K. O'Connor; He Granted in Part his 602 [Refer to paragraph 112]
but it Appears that Somebody Eles denied his 602. Plaintiff Exhausted
this 602 As Administrative Remedies were Available.

119.    Defendant Elorza Accepted Plaintiff's 602 Against Defendant Lee
[Refer to Paragraph 102] On September 2, 2014, At the 'First Level'

120.    Correctional Sergeant V. Plascencia interviewed Plaintiff of his 602
At the First Level; On September 5, 2014.

121.    Defendant Elorza Accepted Plaintiff's 602 [Refer to Paragraph 115]
Without Referring it to the Hiring Authority for Determination of Staff
Complaint Assignment; On September 15, 2014.

122.    On September 16, 2014, Plaintiff 602 Against Defendant Lee was den
-ied At the first Level. [Refer to Paragraph 119]

123.    Defendant Elorza Accepted Plaintiff's 602 [Refer to Paragraph 113]
Without Referring to the Hiring Authority for determination of Staff Complain
-t Assignment, On September 19, 2014.

124.    On October 15, 2014, Plaintiff Re-Submitted the 602 Against Defendant
Lee [Refer to Paragraph 102] for Second Level Review.

125.    Defendant Murphy interviewed Plaintiff On October 17, 2014, Regard
-ing His 602 [Refer to Paragraph 115] And denied it. Plaintiff Submitted His 602
to the third Level On December 7, 2014; His 602 was Exhausted As Administrative

1   Remedies Were Available.

2

3   126.    On October 18, 2014, Defendant Buckner interviewed Plaintiff in
4   Regard His 602 [Refer to Paragraph 113] And denied it; On October 19,
5   2014. On December 3, 2014, Plaintiff Submitted His 602 to the third Level, His
6   602 Was Exhausted As Administrative Remedies Were Available.

7

8   127.    Defendant Elorza Accepted Plaintiff's Appeal On October 24, 2014, At
9   the Second Level; He Also Assigned Himself As the Staff Reviewer [Refer to
10  Paragraph 124]

11

12  128.    On October 29, 2014, the Defendant Elorza Reviewed the 602 And den-
13  ied, His Response Attempted to Assert Facts Not truth And On December
14  3, 2014, Plaintiff Submitted His 602 to the third Level, His 602 Was Exhausted
15  As Administrative Remedies Were Available.

16

17

18          2. Plaintiff Was Denied Access To The Courts

19  129.    As Mentioned Previously, Plaintiff Was Segregated in 'ASU' On May
20  25, 2014, On 'trumped-up' Charges.

21

22  130.    Plaintiff's Property Was 'inventoried' From 'Unit-5' the follow-
23  ing Morning And Stored in 'ASU' With the Property Officer.

24

25  131.    There Was (3) 602(s) in Plaintiff's Property He Needed to get to too
26  Meet time Constraints. On May 29, 2014, Plaintiff Went to Classification
27  Committee And On May 31, 2014, Correctional Officer J. Peska Only gave
28  Plaintiff His Hygientic Property, Plaintiff informed Him that He

1 NEEDS His Legal Material, Peska informed Him He will Have to get Him As Soon
2 He Can because He Has Other Inmate(s) He Needs to get too.

3

4 132.   The Following day, Plaintiff Requested A Supervisor Review but C/o
5 EHRHARDt Refused to Foward it to the Sergeant in 'Asu' Instead He Show
6 -Ed the Request to C/o Peska, And then Returned Plaintiff His Request,
7 informing Him He Needs to Re-write the Request.

8

9 133.   Plaintiff then Submitted An 'Emergency Appeal' informing the De-
10 fendant Elorza that 'ASU' Staff Wouldn't give Him His Legal Material

11

12 134.   On June 6, 2014, Defendant Elorza Rejected the 602 informing Plain-
13 His 602 'DNMC' For Processing As An 'Emergency Appeal' And that His
14 602 is missing Supporting documents; He instructed the Plaintiff to Atte
15 -mpt to Resolve this issue Via CDCR Form 22 (Request). He Also Considered
16 the 602 As A [Regular] Property issue.

17

18 135.   On June 8, 2014, Plaintiff Spoke with Sgt K. Dickson And She informed
19 Plaintiff He would get His Legal Material that day; Plaintiff Waited
20 Patiently but Never got His Legal Material, He Submitted A Request to
21 the S.Jt Via by Mail; Signed And dated by C/o S. Leu

22

23 136.   The Following day He Received His Request with No Staff Response.

24

25 137.   Plaintiff Attempted to Request A Supervisor Review On June 10, 2014 At
26 Approximate 10:40 Hours; No One Seemed to Acknowledge His Request And
27 He was Fed-Up with Such disregard to His Request, Plaintiff decided to
28 'Board-Up' [Cover Up His Window So Prison Officials Can Not See inside

(22)

1   THE CELL].They LEFT Him 'BOARDED-UP' FOR APPROXIMATELY (3 1/2)HOURS . C/o M.WINKFIELD

2   DEBATED WITH PLAINTIFF FOR APPROXIMATELY (10-15)MINUTES. PLAINTIFF BARGAINED

3   WITH C/o M.WINKFIELD'S PROMISE IN GETTING HIM HIS LEGAL MATERIAL IN THE MORNING

4

5   138.     THE FOLLOWING MORNING, PLAINTIFF RECEIVED THE MAJORITY OF HIS LEGAL

6   MATERIAL.

7

8   139.     ON JUNE 12, 2014, PLAINTIFF INFORMED DEFENDANT ELORZA IN HIS WITHDRAW

9   -AL THAT HE RECEIVED HIS LEGAL MATERIAL

10

11  140.    DEFENDANT ELORZA took NOTICE OF SAID WITHDRAWAL THE FOLLOWING DAY.

12

13  141.     PLAINTIFF ALSO SUBMITTED HIS 602 AGAINST DEFENDANT BUCKNER'S WRONG

14  -FUL CONVICTION [REFER to PARAGRAPH 86] too THE THIRD LEVEL this SAME day.

15

16  142.     ON JUNE 22, 2014, PLAINTIFF MAILED HIS 'FALSIFYING DOCUMENTS-602'[REFER to

17  PARAGRAPH 87] to THE THIRD LEVEL; WITH A DECLARATION FOR REASON OF HIS DELAY.

18

19  143.     PLAINTIFF RE-SUBMITTED HIS 'CAMPAIGN OF HARASSMENT-602' THE FOLLOWING

20  day; DEFENDANT ELORZA CANCELLED it THE SAME day  despite being AWARE

21  with PLAINTIFF COULDN'T RETURN HIS 'COH-602' WITHIN THE 30 DAYS TIME CONSTRAIN

22  OF THE REJECTION.

23

24  144.    CDCR, OFFICE OF APPEALS [AKA THIRD LEVEL] RECEIVED PLAINTIFF 602 IN PARA—

25  GRAPH 141; ON JUNE 25, 2014.

26

27  145.     ON JULY 1, 2014, PLAINTIFF RE SUBMITTED HIS STAFF MISCONDUCT-602 AGAINST

28  DEFENDANT BUCKNER [REFER to PARAGRAPH 90] VIA Sy C/o R. GONZALEZ, HE ALSO SUBMIT—

1   ted A declaration for the Reason of his delay.

2

3   146.      On July 7, 2014, Plaintiff Submitted (2) 602(s):

4          a) Against defendant Buckner's Wrongful Conviction [refer to Paragraph

5   92] too the third level; And

6          b) Against Defendant Lee's 'False Custodial Counseling Chrono' [refer to

7   Paragraph 109.]

8

9   147.      Plaintiff Also Submitted Another 602 Against Defendant Elorza Wrong

10  -ful Cancellation, of his 'COH-602', On July 13, 2014. He made it clear that

11  His 602 Was Never About A 'disciplinary Infraction' And that due to being

12  Placed in 'ASU' He Was deprived of his Legal Material Along With that

13  602. His 602 Also described 'Staff Misconduct' And Suggested that Defendant

14  Elorza Should Have Known that Plaintiff Could Not Have Returned his

15  602 On time.

16

17  148.      He Also Submitted A Request for 'Verification' of his 602 in Paragraph

18  145, the Same day

19

20  149.      On July 16, 2014, Plaintiff Submitted A Supervisor Review in Regard

21  Said 'Verification' too defendant Elorza.

22

23  150.      Defendant Elorza Accepted the 602 Against Himself On July 18, 2014

24  Without Referring it to Defendant Lizarraga Pursuant to CCR 3084.9(i)(6) [Re

25  -fer to Paragraph 147]

26

27  151.      As Mentioned Previously, Defendant Lizarraga Determined that his

28  602 in Paragraph 146.b, 'DNMC' for Staff Complaint Assignment [refer to

1  PARAGRAPH 114]

2

3  152.        This Same day, Plaintiff Submitted Another Request In Regard An 'Appeal
4  Issue'

5

6  153.        On July 30, 2014, An Employee from the Appeals Office indicated that
7  Plaintiff's 602 Against Defendant Buckner Was Screened Out And Returned to
8  Him On May 12, 2014; With No further Action.

9

10  154.        The Following day Plaintiff's 602 Was Cancelled despite the Overwh-
11  Elming Evidence Against Defendant Lee's False Custodial Counseling Chrono;
12  for being Untimely.

13

14  155.        Plaintiff Also Submitted Another Supervisor Review too Defendant
15  Elorza In Regard the 'Appeal issue.' He informed the Defendant that He
16  Submitted His 602 On Defendant Buckner [Refer to Paragraph 145] On July
17  1, 2014 And that He Had A CDCR 22 Form Signed And dated by 4o R. Gonzalez
18  Affirming it was Mailed Out.

19

20  156.        In the Early days of the Month of August 2014, Plaintiff Received
21  Answers to both Supervisor Reviews by An Employee On behalf of Defend
22  -ant Elorza. They indicated that His 602 Has Not been Received Again in
23  their Office Since it was Rejected On May 12, 2014. They Also Advise Plaint-
24  iff to Re-Create the 602 And Attach the CDCR 22 forms.

25

26  157.        On August 19, 2014, Plaintiff was interviewed In Regard His 602 On
27  Defendant Elorza. It was denied despite the Overwhelming Facts Against
28  His Misconduct. A Chief Deputy Warden Reviewed the 602 On behalf of

(25)

1  OF DEFENDANT LIZARRAGA.

2

3  158.      CDCR, OFFICE OF APPEALS CANCELLED PLAINTIFF'S 'FALSIFYING DOCUMENTS
4  -602' ON SEPTEMBER 4, 2014; FOR NOT MEETING TIME CONSTRAINTS.

5

6  159.      THE FOLLOWING DAY, PLAINTIFF'S 602 IN PARAGRAPH 146. a, WAS CANCELLED
7  ON THE GROUND THAT HIS 602 WAS RESOLVED AT THE SECOND LEVEL.

8

9  160.      ON SEPTEMBER 11, 2014, PLAINTIFF RECEIVED HIS 602 IN PARAGRAPH 141 FROM
10 THE THIRD LEVEL UN-PROCESSED. HIS 602 WAS HOWEVER RECEIVED ON JUNE 25, 2014,
11 AT THEIR OFFICE.

12

13 161.      (3) DAYS LATER, PLAINTIFF RE-SUBMITTED HIS 602 TO THE THIRD LEVEL VIA
14 BY 'JOL.MONEUS; HE INFORMED THE OFFICE OF APPEAL ON A CDCR22 THAT HIS 602
15 WAS MAILED BACK TO HIM AND THAT HIS 602 WAS (STAMPED) LAST RECEIVED IN THEIR
16 OFFICE ON JUNE 25, 2014.

17

18 162.      ON SEPTEMBER 15, 2014, PLAINTIFF 602 DEFENDANT ELORZA'S CANCELLA-
19 TION IN PARAGRAPH 154. HE ALLEGED THAT THERE WAS NO LEGITIMATE REASON
20 WHY TO CANCELL HIS 602. HE ASSERTED THAT THE FALSE CDC 128 A DOES NOT HAVE ON
21 IT A 'PRESCRIBED TIME CONSTRAINT' HE ALSO SUGGESTED THAT THE APPEALS COORDINAT-
22 OR 'ABUSED HIS DISCRETION' IN DETERMINING IF THE ISSUE WAS ONGOING OR NOT.

23

24 163.      DEFENDANT ELORZA ACCEPTED THE 602 WITHOUT REFERRING IT TO DEFEND-
25 LIZARRAGA AND ASSIGNED IT TO HIMSELF DESPITE HAVING PERSONAL INVOLVEMENT
26 IN THE ISSUE BEING APPEALED; WHICH IS CONTRARY TO CCR § 3084.7 (d)(1); ON SEPT-
27 EMBER 19, 2014.

28

164.   On September 21, 2014, Plaintiff 602 the Cancellation in Paragraph 158 to the third Level. He Asked them to Exercise discretion due to Having been deprived of Legal material in 'ASU.'

165.   Plaintiff Submitted His 602 Against Defendant Buckner On October 3, 2014; As Advised in Paragraph 156, Via by 'Io J. Lindsey.'

166.   On October 5, 2014, Plaintiff Mailed His 602 in Paragraph 157 to the third Level. ('OOA')

167.   The Appeals Office in 'MCSP' Received Plaintiff's 602 in Paragraph 165, On October 6, 2014 At 8:47 AM

168.   Plaintiff 602 the Cancellation of the 'OOA' in Paragraph 159. He Alleged that their Cancellation was 'Unjustified' because He Had A Right to 'Exhaust Administrative Remedies.' [Date of Submission: October 7, 2014]

169.   On October 13, 2014, Plaintiff was interviewed by Defendant Eloza in Regard the 602 Against Himself in Paragraph 162. He denied it On grounds that were Remotely different from what Plaintiff was Asserting. The Chief Deputy Warden Reviewed the 602 On behalf of Defendant Lizarraga.

170.   The 'OOA' Cancelled Plaintiff's 602 in Paragraph 161. He Found it Futile to 602 Such Frivolous Cancellation. [Date of Cancellation: October 17, 2014.]

171.   Plaintiff Mailed A Request Via by 'Io J. Lindsey On November 2, 2014, Requesting 'Verification' of the 'Staff Misconduct-602' Against Defendant Buckner. On November 4, 2014, Plaintiff got A Response On His Request indicating that the 602

(27)

1   Has Not Been Seen in the Appeals Office Since they Screened it back to Him.

2

3   112.      Plaintiff Also Submitted His 602 to the third Level On the Same day,

4   i.e., 11-4-14. [Refer to Paragraph 167]

5

6   113.      On November 20, 2014, Plaintiff Received His 602 in Paragraph 166; by

7   Mail.

8

9   114.      Plaintiff Submitted A Supervisor Review On December 3, 2014, Stat

10  -ing that He Received His 602 On November 20, 2014.

11

12  115.      The third Level denied Plaintiff's Cancellation-602 On His 'Falsif

13  -Lying Documents-602' On December 5, 2014.

14

15  116.      On December 18, 2014, Defendant Elorza Answered Plaintiff's Super

16  -visor Review. He indicated that He Could Not Explain Why Plaintiff Receive

17  -d His 602 back On November 20, 2014, When they Last Had it in their Possess-

18  ion On May 12, 2014.

19

20  117.      Plaintiff Could No Longer tolerate All the Harassment, Retaliation

21  And Other factors Related to His Condition of Confinement; He Swallowed

22  A Razor blade - He Felt Suicidal, On January 6, 2015. He Was Housed in

23  the 'Observation Housing Unit' Cause of His Symptoms. Due to His 'Mental

24  Health Crisis' He Was Placed in the 'Crisis bed' On January 7, 2016. His

25  Confinement Was Very Restricted due to Plaintiff being Considered A

26  danger to Himself. He Would Submit His 602(s) When given An Opportunity

27  And Under direct Supervision Of Mental Health Staff. He Was transfer

28  -red to the 'Department of State Hospital.' He Was Practially Under

1  MENTAL HEALTH STAFFS' Custody From January too October of 2015.

2

3  178.    Many of Plaintiff's 602(s) were cancelled for untimeliness. At the

4  third level, during his Confinement with Mental Health Staff, he would 602

5  and /or re-submit those Cancelled 602(s) requesting 'DOA' to 'Excercise

6  discretion.' The 602(s) of the Cancellation were even cancelled for untime

7  -liness. Other 602(s) were exhausted properly.

8

9  179.    At all times mentioned, Plaintiff has informed COA that his

10  reason for submitting those 602(s) late were because he was being

11  reasonably restricted due to his Mental Health treatment in the

12  custody of Mental Health Staff. The COA even dismissed this

13  reason in a few of these Cancellation - 602(s) decision(s).

14

15  180.    Plaintiff submitted a 602 too the third level alleging that

16  they've been unreasonably rejecting and cancelling his 602(s) in

17  a deliberate fashion. Plaintiff's 602 was obviously a Staff Compl-

18  aint which essentially requires a 'Rights and Responsibility Statement'

19  as the only supporting document; pursuant to CCR § 3084.1(i), despite

20  such allegation, they at first did not process the 602 and mailed it

21  back; then, they rejected it for missing supporting documents. Plant

22  -iff found it futile to pursue the 602 because the third level was

23  acting and treating the 602 with frivolity.

24

25  / · /

26

27  / · /

28

## V. Claims For Relief

181.    The Actions of the Defendant Guzman in Conducting 'An Unauthorized Pat Search' Against Plaintiff Without Any Reasonable Cause And/Or Suspicion - Denied Him the Right to 'Un Reasonable Search' And 'bodily Privacy' In Violation of the Fourth Amendment of the United States Constitution.

182.    The Above-described Violation of the Fourth Amendment Rights - Constituted Using Physical Force Against Plaintiff Without Need Or Provocation And was done Maliciously And Sadistically - Constituting A Cruel And Unusual Punishment in Violation of the Eighth Amend -ment.

183.    The Failure of Defendant Cochran to intervene And/or Report the Actions of the Defendant Guzman Constituted Deliberate Indifference to the Plaintiff's Safety, And Contributed to And Proxi-mately Caused the Above-described Violations of the Fourth And Eighth Amendment Rights.

184.    The Failure of Defendant Montes to Report the informed 'Employee Sexual Misconduct' Against Plaintiff by the Defendant Guzman Constituted Deli -berate Indifference to the Plaintiff's And Other Prisoners' Safety And Serious Medical Needs; Contributed to And Proximately Caused the Above-described Violations of the Fourth And Eighth Amendment Rights

185.    The Failure of Defendant Elorza to Report too the Office of Inter-nal Affairs the informed 'Employee Sexual Misconduct' Against Plaintiff by Defendant Guzman And/or Have 'Video Recorded' the Suggested Allega-tion of 'Unnecessary/Excessive Use of Force' Constituted Deliberate

1  indifference to the Plaintiff's And Other Prisoners' Safety, And Contributed to
2  And Proximately Caused the Above-described Violations of the Fourth And
3  Eighth Amendment.

4

5  186.    The Failure of Defendant Lizarraga And Murphy to take disciplinary
6  Or Other Actions to Curb the informed 'Employee Sexual Misconduct' Against
7  Plaintiff by Defendant Guzman Constituted Deliberate indifference to the
8  Plaintiff's And Other Prisoners' Safety, And Contributed to And Proximately
9  Caused the Above-described Violations of the Fourth And Eighth Amendment
10 Rights.

11

12 187.    The Actions of Defendant Smiley, Telander And Coffin in Not taking
13 disciplinary Or Other Actions to Curb the known Failure of Defendant Montes'
14 to Report the informed 'Employee Sexual Misconduct' Against Plaintiff by
15 Defendant Guzman Constituted Deliberate indifference to the Plaintiff's
16 And Other Prisoners' Safety And Serious Medical Needs; Contributed to
17 And Proximately Caused the Above-described Violations of the Fourth And
18 Eighth Amendment Rights.

19

20 188.    The Above-described Deliberate indifference Responses of Defendants'
21 Smiley, Telander, Coffin And Montes; too Plaintiff's Serious Medical Needs —
22 Constituted A Cruel And Unusual Punishment in Violation of the Eighth
23 Amendment.

24

25 189.    The Actions of Defendant Buckner in Wrongfully Convicting Plaintiff in
26 those Disciplinary Hearings imposed An Atypical And Significant Hardship on
27 Plaintiff in Relation to the Ordinary incidents of Prison Life in Violation of
28 the Fourteenth Amendment.

190. The Actions of Defendant Lizarraga And Elorza in Not Classifying the 602 As A Staff Complaint And/or Process this 602 Against Defendant Buckner Obstructed Plaintiff's Right to Petition the Government for A Redress of grievances in Violation of the First Amendment.

191. The Above-described Violation of the First Amendment Right Subjected Plaintiff to A Campaign of Harassment by Defendant Lee because of the Above-described Violation of the Fourteenth Amendment Right

192. The Actions of Defendant Elorza in 'Rejecting' the 602 Against the Defendant Lee's Campaign of Harassment - without Referring the 602 too the Defendant Lizarraga for Determination of Assignment of Staff Complaint - Obstructed Plaintiff's Right to Petition the Government for A Redress of grievances in Violation of the First Amendment.

193. The Actions of Defendant Lee in Fabricating Disciplinary Charges And Defendant Buckner Classifying this Fabricated Disciplinary Charges - Constituted Retaliation Against the Plaintiff for Exercising His Right to Petition the Government for A Redress of grievances in Violation of the First Amendment.

194. The Actions of Defendant Buckner in Placing Plaintiff in 'ASU' on trumped-Up Charges - Constituted Retaliation Against the Plaintiff for Exercising His Right to Petition the Government for A Redress of grievances in Violation of the First Amendment.

195. The Actions of Defendant Quezada in Ordering Plaintiff to Submit to An Unauthorized Urine test Against Plaintiff Without Any Reasonable Cause

1  And /or Suspicion – Denied Him the Right to 'Unreasonable Search' And 'bodily
2  Privacy' in Violation of the Fourth Amendment.

3

4  196.      The Above-described Violation of the Fourth Amendment Rights –
5  Constituted Retaliation by Proxy of Defendant Buckner- in Violation of the
6  First Amendment.

7

8  197.      The Above-described Violations of the First Amendment Rights in
9  Paragraph '194' And '196' Caused Plaintiff to Loss Personal Property by Pri-
10 son Officials in their Possession – imposing An Atypical And Significant Hard
11 -ship On Plaintiff in Relation to the Ordinary Incidents of Prison Life in Viola
12 -tion of the Fourteenth Amendment.

13

14 198.      The Above-described Violations of the First And Fourteenth Rights Also
15 Subjected Plaintiff to be deprived of His 'Legal Material' For Approximately
16 20 days – Obstructing Plaintiff's Right of Access to the Courts in Violation of
17 First, Fifth And Fourteenth Amendment.

18

19 199.      The Actions of Defendant Soares in Fabricating Disciplinary Charges
20 And Defendant Lee in Fabricating A Custodial Counseling Chrono too bolster
21 the Said fabricated Disciplinary Charges – Constituted Retaliation by Proxy OF A
22 Conspiracy On behalf of Defendants' Buckner And Lee in Violation of the First
23 And Fourteenth Amendments

24

25 200.      The Actions of Defendant Elorza in 'Cancelling' the 602 Against Defend
26 -ant Lee's Campaign of Harassment Denied Plaintiff the Right to Petition
27 the Government For A Redress of grievances And Subjected Him to Retaliation in
28 Violation of the First Amendment.

(33)

201.    The Actions of Defendant Murphy Finding Plaintiff Guilty of the Fabric-
ated Disciplinary Charges by Defendant Soares - imposes An Atypical And Sign-
ificant Hardship On Plaintiff in Relation to the Ordinary Incidents of Prison
Life in Violation of the Fourteenth Amendment.

202.    The Actions of Defendant Ali in Using Physical Force Against Plaintiff
without Need Or Provocation And was done Maliciously, Sadistically And in Retali-
ation for Excercising His Right to Petition the Government for A Redress of Grieva-
nces in Violation of the First And Eighth Amendments.

203.    The Actions of Defendant Lizarraga in Determining that both 602(s)
Against Defendant Lee's Fabrication of Documentation Against Plaintiff
Does Not Meet the Criteria for Assignment As A Staff Complaint - imposes
An Atypical And Significant Hardship On Plaintiff in Relation to the
Ordinary Incidents of Prison Life And Obstructed Plaintiff's Right to Petition
the Government for A Redress of Grievances in Violation of the First And
Fourteenth Amendments.

204.    The Actions of Defendant Elorza in 'Cancelling' One of the 602(s)
Against Defendant Lee's Fabrication of A 'Custodial Counseling Chrono' to
bolster the Fabricated Disciplinary Charges by Defendant Soares - Denied Plain-
tiff's Right to Petition the Government for A Redress of Grievances in Violation
of the First Amendment.

205.    The Actions of An Agent On behalf of Defendant Lizarraga in Denying
Plaintiff His 602 Against Defendant Quezada's Unauthorized Urine test -
Constituted An imposed Atypical And Significant Hardship On Plaintiff in
Relation to the Ordinary Incidents of Prison Life And Retaliation for

1  Excercising His Right to Free Speech, in Violation of the First And Fourth Amend
2  -ment.

3

4  206.      The Actions of Defendant Murphy And An Agent On behalf of De-
5  fendant Lizarraga in Denying Plaintiff His 602 Against the Wrongful Convict-
6  ion of the trumped-up Charges - Constituted An imposed Atypical And Signif.
7  -icant Hardship On plaintiff in Relation to the Ordinary incidents of
8  Prison Life And Retaliation for Excercising His Right to Petition the Govern-
9  ment for A Redress of grievances in Violation of the First And Fourteenth
10  Amendment.

11

12  207.      The Actions of Defendant Buckner And An Agent On behalf of De-
13  fendant Lizarraga in Denying plaintiff His 602 Against the Wrongful Convict
14  -ion of Defendant Murphy in Defendant Soares' fabricated disciplinary
15  Charges - Constituted An imposed Atypical And Significant Hardship On
16  plaintiff in Relation to the Ordinary incidents of Prison Life And Retali
17  -ation for Exercising His Right to Petition the Government for A Redress
18  of grievances in Violation of the First And Fourteenth Amendment.

19

20  208.      The Actions of Defendant Elorza in Accepting both Cancellation -
21  602(s) Without Referring it to Defendant Lizarraga For Determination of
22  Staff Complaint Assignment - Obstructed plaintiff's Right to Petition the
23  Government For A Redress Of grievances in Violation of the First Amend-
24  ment.

25

26  201.      The Action of Defendant Elorza in Assigning Himself in One of those
27  Cancellation-602 As described Above - obstructed plaintiff's Right to Petit
28  -ion the government for A Redress of grievances in Violation of the First

1  Amendment.

2

3  210.    THE Actions of An Agent On behalf of Defendant Lizarraga in Denying
4  booth Cancellation -602(s) Against Defendant Elorza - Denied Plaintiff His Right
5  to Petition the Government for A Redress of Grievances And imposed an
6  Atypical And Significant Hardship On Plaintiff in Relation to the Ordinary
7  incidents Of Prison Life - Constituting Retaliation For Exercising Such Right
8  in Violation of the first And Fourteenth Amendment.

9

10  211.    In Sum - Conjuring these Above-described Violations All together -
11  Obstructed Plaintiff His Right to Access of the Courts in Violation of the First
12  fifth And fourteenth Amendment.

13

14  212.    THE Above-described Violations Of the First, fifth And Fourteenth
15  Amendment Rights - deprived Plaintiff to A Humane Condition of Confinement
16  - Subjecting Him to A Cruel And Unusual Punishment in Violation of the
17  Eighth Amendment.

18

19

20              VI PRAYER FOR RELIEF

21

22    WHEREFORE, Plaintiff Respectfully Prays that this Court
23  A. AWARD plaintiff Monetary damages, Compensatory And Punitive, in An
24     Amount to be determined At trial,

25

26  B. ISSUE An Injunction Ordering All the defendants Or their Agents to:
27     (i) REVERSE And dismiss All disciplinary Actions taken On Plaintiff
28        From December of 2013 up-into Now;

1     (2) Restore Any And All Good time Credits of Said disciplinary Actions,

2     (3) Expunge All Said disciplinary Action Records From Plaintiffs C.File;

3     (4) Take disciplinary Actions Against the defendant Named Within this Com-

4       plaint; And

5

6 (c) Grant Such Other Relief As it May Appear that plaintiff is Entitled.

7

8

9      Dated: 3-4-17                     Respectfully Submitted,

10                                       Anthony Bobadilla

11                                       Plaintiff In Pro Se

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

Anthony Bobadilla
_____
Plaintiff or Petitioner

Case Number: 16-CV-0226-GEB-EFB

J. Lizarraga, et al.
_____
Defendant or Respondent

_____ /

I hereby certify that on March 4 , 20 17 , I served a copy

Of the attached First Amended Complaint ,

by placing a copy in a postage paid envelope addressed to the person(s) hereinafter listed,

by depositing said envelope in the United States Mail at Mule Creek State Prison :

(List Name and Address of Each
Defendant or Attorney Served)

OFFICE OF THE ATTORNEY GENERAL
1300 "I" Street, Suite 125
Sacramento, Ca 94244-2550
In c/o Andrea R. Sloan
Attorney For Defendant(s)

I declare under penalty of perjury that the foregoing is true and correct

_____
(Name of Person Completing Service)